**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Bankruptcy Court** |
| **OAK ROCK FINANCIAL, LLC,** | **Chapter 11 Case No.** |
| **Debtor.** | **8-13-72251 (REG)** |

| | |
|---|---|
| **In re:** | |
| **THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, on behalf of the bankruptcy estate of OAK ROCK FINANCIAL, LLC,** | **Case Nos.: 2:15-cv-01757 (SJF), 2:15-cv-01826 (SJF), 2:15-cv-02165 (SJF), and 2:15-cv-02564 (SJF)** |
| **Appellants,** | **Procedurally Consolidated under Case No. 2:15-cv-01757 (SJF)** |
| **- against –** | **Hon. Sandra J. Feuerstein** |
| **ISRAEL DISCOUNT BANK OF NEW YORK, AS AGENT,** *et al.*, | |
| **Appellees.** | |

**BRIEF OF APPELLANT OFFICIAL COMMITTEE**
**OF UNSECURED CREDITORS**

**PERKINS COIE LLP**
Schuyler G. Carroll
John D. Penn
David F. Olsky
30 Rockefeller Plaza, 22nd Floor
New York, New York 10112
Tel:  (212) 262-6900
Fax: (212) 977-1649

*Attorneys for the Official Committee of Unsecured Creditors of Oak Rock Financial LLC*

Dated:  July 7, 2015

## <u>CORPORATE DISCLOSURE STATEMENT</u>

The Official Committee of Unsecured Creditors for the bankruptcy estate of Oak Rock Financial, LLC (the "Committee") has no parent corporation and no publicly owned company holds 10% or more of its stock.  No member of the Committee is a publicly owned company.

**TABLE OF CONTENTS**

**Page**

JURISDICTIONAL STATEMENT ............................................................. 1

STATEMENT OF THE ISSUES PRESENTED ........................................ 1

STATEMENT OF THE CASE.................................................................... 3

    A.    The Committee's Formation And Appointment To Pursue Estate Claims Against IDB .................................................................. 3

    B.    The Committee Objected To Summary Judgment Decided As A Contested Matter In The Bankruptcy Case .................................... 5

    C.    The Bankruptcy Court Decision Ignores The Committee's Objection.................. 8

SUMMARY OF THE ARGUMENT ........................................................ 9

ARGUMENT ............................................................................................ 10

JOINDER ................................................................................................. 16

CONCLUSION........................................................................................ 16

# TABLE OF AUTHORITIES

**CASES**

*Bear v. Coben (In re Golden Plan of Calif., Inc.)*,
    829 F.2d 705 (9th Cir.1986) ........................................................................................11

*Brady v. Andrew (In re Commercial W. Fin. Corp.)*,
    761 F.2d 1329 (9th Cir. 1985) ....................................................................................11

*Citibank, N.A. v. Tele/Resources, Inc.*,
    724 F.2d 266 (2d Cir. 1983)........................................................................................13

*Davis v. Blige*,
    505 F.3d 90 (2d Cir. 2007)..........................................................................................12

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 (2002)....................................................................................................12

*Feld v. Zale Corp. (In re Zale Corp.)*,
    62 F.3d 746 (5th Cir. 1995) ........................................................................................11

*Gail v. South Branch Nat. Bank of South Dakota, Sioux Falls S.D.*,
    783 F.2d 125 (8th Cir. 1986) ......................................................................................12

*Haber Oil Co. v. Swinehart (Matter of Haber Oil Co.)*,
    12 F.3d 426 (5th Cir. 1994) ........................................................................................11

*Harder v. United States*,
    No. Civ. A. No. 91-10513-WD, 1993 WL 667770 (D. Mass. Aug. 18, 1993)..........15, 16

*HLO Land Ownership Assocs. Ltd. P'ship. v. City of Hartford*,
    248 Conn. 350, 727 A.2d 1260 (1999) ......................................................................12

*In re Gilchrist Co.*,
    403 F. Supp. 197 (E.D. Pa. 1975) ..............................................................................15

*In re Leisure Time Sports, Inc.*,
    194 B.R. 859 (9th Cir. B.A.P. 1996)............................................................................14

*In re Morabito Bros., Inc.*,
    188 B.R. 114 (Bankr. W.D.N.Y. 1995) .......................................................................11

*In re Panache Cuisine, LLC*,
    No. 13–17027–JS, 2013 WL 5350613 (Bankr. D. Md. Sept. 13, 2013)......................11

- i -

*In re Royster Co.*,
  132 B.R. 684 (Bankr. S.D.N.Y. 1991) ................................................................12

*In re Screens Unlimited, Inc.*,
  9 B.R. 186 (Bankr. M.D. Fla. 1981) ..................................................................14

*In Roswell Capital Partners LLC v. Beshara*,
  436 F. App'x. 34 (2d Cir. 2011) ........................................................................14

*Louis Jones Enters. v. United States (In re Louis Jones Enters.)*,
  Nos. 10 B 11375, 10 A 1061, 2010 WL 4259977 (Bankr. N.D. Ill. Oct. 21,
  2010) ..........................................................................................................14, 16

*Matter of Giddens*,
  205 B.R. 349 (Bankr. M.D. Ga. 1997)................................................................15

*SLW, Inc. v. Mansaray-Ruffin (In re Mansaray-Ruffin)*,
  530 F.3d 230 (3rd Cir. 2008) ............................................................................10

*Smith v. Bic Corp.*,
  Civ. A. No. 87–0795, 1987 WL 14619 (E.D. Pa. 1987).........................................12

*Tex. Comptroller of Public Accounts v. Liuzza (In re Tex. Pig Stands, Inc.)*,
  2008 U.S. Dist. LEXIS 116047, Case No. SA-08-CA-0533-OG (W.D. Tex.
  Aug. 27, 2008) ..................................................................................................11

*Unisys Fin. Corp. v. Resolution Trust Corp.*,
  979 F.2d 609 (7th Cir.1992) .............................................................................14

**STATUTES**

11 U.S.C. § 502(d) ....................................................................................................5

11 U.S.C. § 541(d) ....................................................................................................7

11 U.S.C. §§ 544, 547 and 548 .................................................................................5

**OTHER AUTHORITIES**

Federal Rule of Bankruptcy Procedure 7001 .......................................8, 9, 10, 11, 14, 16

Federal Rule of Bankruptcy Procedure 7012 ..............................................................9

Federal Rule of Bankruptcy Procedure 9014 ..............................................................6

Federal Rule of Bankruptcy Procedure 4003(d) .......................................................10

- ii -

Federal Rule of Bankruptcy Procedure 7026(f) ............................................................................9

Federal Rule of Bankruptcy Procedure 8014(e) .........................................................................16

Federal Rule of Civil Procedure 12 ............................................................................................9

Federal Rule of Civil Procedure 26(f) ........................................................................................7

## JURISDICTIONAL STATEMENT

The Committee adopts the Jurisdictional Statement of the briefs submitted by Appellants Medallion Bank and Medallion Financial Corp., through its division Medallion Business Credit (collectively, "Medallion", and its brief, the "Medallion Brief"), and by ZFI Endowment Partners, L.P. ("ZFI") and North Mill Capital, LLC ("North Mill") (the "ZFI/North Mill Brief"). Medallion Br. at 1-2; ZFI/North Mill Br. at 4.  Further, the Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) because the March 19, 2015 order (as amended on April 20, 2015) that is the subject of the appeal is a final order of the bankruptcy court (the "Bankruptcy Court Order"). The Committee timely filed its Notice of Appeal on May 4, 2015.

## STATEMENT OF THE ISSUES PRESENTED

The Committee states that the issues listed below are presented on appeal.  For the reasons set forth in the Medallion Brief, each of these issues should be reviewed *de novo*. Medallion Br. at 5-6.  In this Brief, the Committee shall focus on the first six issues (Issues 1 – 6); the remaining five issues are addressed in the Medallion and ZFI/North Mill Briefs (Issues 7 – 11) as permitted in this Court's Order of June 5, 2015, Docket No. 21.

1.     Did the Bankruptcy Court err, as a matter of law, in overruling the Committee's Objection that IDB as Agent's (the "Agent") motion for summary judgment against the Committee (and the Debtor's bankruptcy estate) was relief that could only be obtained in an adversary proceeding and was improperly requested in a contested matter?

2.     Did the Bankruptcy Court err, as a matter of law or fact, in granting summary judgment in favor of the Agent and against the Committee?

3.    Whether the Bankruptcy Court erred, as a matter of law or fact, in granting summary judgment in favor of the Agent by failing to draw all reasonable inferences of fact in favor of the nonmoving parties (Medallion, North Mill, and the Committee).

4.    Did the Bankruptcy Court err, as a matter of law or fact, in characterizing the scope of the cross-motions for summary judgment as "asking the Court to determine the priority, extent and enforceability of a recorded lien against substantially all of the assets of" the Debtor?

5.    Did the Bankruptcy Court err, as a matter of law or fact, in holding that the Agent "holds a first lien position on the Debtor's assets"?

6.    Did the Bankruptcy Court err, as a matter of law or fact, in stating that it is "undisputed that the 2001 Financing Statement was assigned to [the] Agent in 2006"?

7.    Did the Bankruptcy Court err, as a matter of law or fact, in holding that a UCC-3 assignment notice that was never signed by the assignor, is a substantive instrument of assignment?

8.    Did the Bankruptcy Court err, as a matter of law or fact, in holding that Israel Discount Bank, in its individual capacity (referred to as "IDB" when acting in its individual capacity), effected a substantive assignment to the Agent of rights under IDB's 2001 UCC financing statement?

9.    Did the Bankruptcy Court err, as a matter of law or fact, by ignoring contractual restrictions agreed upon by the Oak Rock Debtor and IDB that rendered any non-compliant assignment of rights from IDB to the Agent ineffective?

- 2 -

10. Did the Bankruptcy Court err, as a matter of law or fact, in ignoring the parties' clear intent, evidenced in the underlying contracts, to limit the assignability of priority rights under UCC financing statements?

11. Whether the Bankruptcy Court erred, as a matter of law, in failing to recognize the distinction between a "secured party of record" as defined under UCC Section 9-511 and a "secured party" as defined under UCC Section 9-102.

## STATEMENT OF THE CASE

The Committee refers herein to the Statement of Facts and Statement of the Case set forth in the Medallion Brief and the ZFI/North Mill Brief. Medallion Br. at 11-22; ZFI/North Mill Br. at 10. The Committee further states as follows, and provides a separate Committee Appendix ("CA") for the documents referenced herein to the extent not referenced in the Medallion Appendix ("MA").

### A. The Committee's Formation And Appointment To Pursue Estate Claims Against IDB.

On May 27, 2014, more than a year after certain lenders filed an involuntary Chapter 7 petition against Oak Rock Financial, LLC (the "Debtor" or "Oak Rock"), the United States Trustee created the Committee by appointing two members and on June 19, 2014, the U.S. Trustee appointed three additional members to the Committee. Bankruptcy Court Memorandum Opinion dated March 19, 2015 ("Mem. Op.") at 4.

On August 12, 2014, the Bankruptcy Court entered an order approving a stipulation among the Debtor and the Committee concerning the prosecution of certain causes of action against the Agent and members of the lending group (the "Committee Stipulation"). CA_0185 - CA_0190. Pursuant to the Committee Stipulation, the Debtor assigned all of the claims or

- 3 -

causes of action that the Debtor and the Debtor's bankruptcy estate (the "Estate") may have against the Agent with respect to the governing credit agreement,[1] including those claims and causes of action relating to the nature, extent, priority and/or validity of the liens, security interests and claims asserted by the Agent in the Chapter 11 Case.  The stipulation also granted the Committee the standing to litigate or settle those claims.  CA _0185.

Five days later, on August 17, 2014, the Committee filed an 11-count complaint (the "Committee Complaint") commencing an adversary proceeding styled *The Official Committee of Unsecured Creditors on behalf of the bankruptcy estate of Oak Rock Financial, LLC v. Israel Discount Bank of New York, Bank Leumi USA, Bank Hapoalim B.M., and Capital One, N.A.*, Adv. No. 14-08231 (the "Committee Adversary Proceeding").  CA _0016 - CA_0053 (redacted version), CA_0191 - CA_0228 (unredacted version).

The Complaint in the Committee Adversary Proceeding challenged the Agent's lien on several grounds, including the following:

First cause of action ("Equitable Subordination of IDB Claims").  The Committee sought the subordination of the Agent's claims on equitable grounds.  CA_0039, CA_0214 (Committee Compl. at 24).

Fourth cause of action ("Declaratory Judgment Regarding Funds Held in Segregated Accounts and 2001 Financing Statement"):   The Committee sought a declaration that the "secured claim asserted by [the Agent] would be reduced, eliminated or effectively rendered an unsecured claim," (CA_0044, CA_0219 (Committee Compl. at 29 ¶ 95)), and that "the 2001 Financing Statement is of no further force, effect or consequence as a result of the satisfaction

---

[1]   The Capitalized Terms used herein shall have the same meaning as in the Medallion Brief.

- 4 -

and payment in full of the debt evidenced by the 2001 Credit Agreement" (CA_0045, CA_0220 (Committee Compl. at 30 ¶ 98)).

Fifth through Tenth causes of action.  The Committee objected to the claims that the Agent and lenders filed and the replacement liens granted as "adequate protection" relief asserted by the Agent on behalf of itself and the members of the lending group and sought the disallowance of those claims pursuant to 11 U.S.C. § 502(d) as a result of the Agent and the lenders receiving transfers avoidable under 11 U.S.C. §§ 544, 547 and 548.  CA_0045 - CA_0052, CA_0220 - CA_00227 (Committee Compl. at 30-37).

The Committee Adversary Proceeding alleged, among other things, that the Agent and the lenders it represented knew of or should have known of the fraud being committed by Oak Rock.  CA_0018, CA_0024, CA_0032, CA_0046, CA_0048, CA_0193, CA_0199, CA_0207, CA_0221, CA_223 (Committee Compl. at 3, 9, 17, 31 and 33).

**B.     The Committee Objected To Summary Judgment Decided As A Contested Matter In The Bankruptcy Case.**

On September 19, 2014, Medallion, North Mill and the Agent entered a stipulation (the "Medallion/North Mill/Agent Stipulation") scheduling dates for a motion for summary judgment "relating to the defects in, failure to attach to and lapses of the security interests and Liens allegedly held by the Agent (the 'Perfection Issues')."  CA_0178.  The signatories to the Medallion/North Mill/Agent Stipulation acknowledged the Committee Adversary Proceeding asserting some of the same issues, but the Committee was not a signatory to the Medallion/North Mill/Agent Stipulation, did not consent to the briefing schedule or to litigating the issues as a

- 5 -

contested matter.  CA_0179.[2]  The Medallion/North Mill/Agent Stipulation was presented to the Bankruptcy Court before the Agent and other Lenders had even filed answers to the Committee Complaint.

The Bankruptcy Court's approval of the Medallion/North Mill/Agent Stipulation authorizing summary judgment motions by Medallion, North Mill, and the Agent as contested matters in the main bankruptcy case arose from the particular disputes among Medallion, North Mill, and the Agent.  Those three firms disputed the disposition of the proceeds attributable to Medallion and North Mill's participation interest as a result of the Debtor's post-petition sale of certain portfolios of loans and receivables (*i.e.*, a loan to Merchants Advance).  Mem. Op. at 5.  Shortly after the Bankruptcy Court ruled in March 2014 that Medallion and North Mill were "true participants," the Bankruptcy Court sought to resolve whether those two firms' participation interests in certain of the Debtor's portfolios of loans and receivables and proceeds from the sale thereof were subject to the Agent's purported lien.  *Id.*  Medallion and North Mill asserted that the Agent's lien was not enforceable for various reasons, including lack of perfection, and thus they had priority in distribution of the proceeds from the sale by virtue of their participation interests in certain loans made by the Debtor.  *Id.*  The Agent asserted that the participation interests of Medallion and North Mill were subject to the Agent's purported lien, and thus the Agent was entitled to the proceeds from the Debtor's post-petition sale of those loan and receivables portfolios.  *Id.*

The Committee had no role in this dispute (and indeed, the dispute arose before the Committee was in existence).  Significantly the dispute among Medallion, North Mill, and the

---

[2]   "Contested matters" are governed by Federal Rule of Bankruptcy Procedure 9014.

Agent did not involve the Debtor's assets or property of the Estate.  Medallion and North Mill were previously adjudicated to hold "true participation interests" in certain loans that were not part of the estate. Mem. Op. at 2, 5; *see* 11 U.S.C. § 541(d).  Rather, the issue was whether the sales proceeds attributable to the Medallion and North Mill participation interests were subject to the Agent's purported lien. Mem. Op. at 5. This dispute was solely among Medallion, North Mill and the Agent.[3]

Consistent with the Medallion/North Mill/Agent Stipulation, the three signatories filed motions for summary judgment on October 8, 2014 (*i.e.*, only about six weeks after the Committee Complaint was filed), oppositions on October 28, 2014, and replies on November 10, 2014.  CA_0180.

The Agent's motion for summary judgment went well beyond the "Perfection Issues" (as defined in the Medallion/North Mill/Agent Stipulation) in two substantial ways.  First, the Agent sought a ruling that it had a valid, perfected lien not only against the North Mill and Medallion participation interests but also against the Committee.  CA_0183.  Second, the Agent sought that ruling against *all* "other individuals or entities who have challenged the validity, perfection and/or priority of IDB's lien on the Debtor's assets."  CA_0183.  That is, the Agent sought summary judgment on issues raised in the Committee Adversary Proceeding shortly after filing its answer and without first attending a Rule 26(f) status conference, much less providing any discovery in that adversary proceeding.[4]  It also sought to have its purported lien validated against all other possible objectors including all those who, at the time, the Bankruptcy Court

---

[3]   The Debtor holds the proceeds from the Merchants Advance sale (and other sales) in escrow, but it does not have a stake in the outcome of the dispute with respect to the proceeds attributable to the Medallion and North Mill participation interests.

[4]   The Agent never filed a motion for summary judgment in the Committee Adversary Proceeding.

had deemed not to be "true participants" and who had not actively litigated the issue given that decision.  Thus, the Agent sought to have a determination both on the non-estate assets that were actually at issue in its dispute with Medallion and North Mill, *and* assets of the Estate in which no other party had sought a determination and no other party consented to proceeding as a contested matter.

On October 28, 2014, the Committee filed a written objection in the main bankruptcy case.  MA Ex. 28.  The Committee argued that Federal Rule of Bankruptcy Procedure 7001 required that the relief sought by the Agent be prosecuted in the Committee Adversary Proceeding, not as a contested matter in the bankruptcy case (and not without discovery being provided to the Committee).  MA Ex. 28 at 2-3.  The Committee reiterated that it did "not consent[] to these issues being presented in a contested matter in the bankruptcy case and declines the invitation to do so at this time."  MA Ex. 28 at 2.

### C. The Bankruptcy Court Decision Ignores The Committee's Objection.

The Bankruptcy Court's Memorandum Opinion neither referenced nor addressed the Committee's Objection.  Instead, the Bankruptcy Court couched its ruling as being for the purpose of addressing the dispute between Medallion, North Mill and the Agent.  *E.g.*, Mem. Op. at 10 (the Agent asserted a perfected lien on substantially all of the assets, and thus "further finding regarding the nature, extent and effect, if any, [the Agent's] lien has on the ***True Participants***' interests were necessary before the rights of the various parties in and to the loans, the loan receivables and loan proceeds could be ascertained") (emphasis added).

The Bankruptcy Court nonetheless granted summary judgment against the Committee *and* against any other party that had an interest in the Debtor's portfolio of loans and receivables.

- 8 -

Bankruptcy Court Order at 1.   As amended, the Bankruptcy Court Order entered summary judgment against the Committee with respect to its claims in the Committee Adversary Proceeding without providing the Committee the opportunity for discovery (or even a Rule 7026(f) conference), and against all other parties in interest in the bankruptcy case (including those who had been appealing the "true participation" decision to this Court).

## SUMMARY OF THE ARGUMENT

The Committee references and incorporates herein the arguments in Sections I, II, and IV of the Medallion Brief, and also the entirety of the ZFI and North Mill Brief.   The Committee makes the following additional arguments:

The Bankruptcy Court erred in granting summary judgment against the Committee and the Estate because the Committee never consented to deciding the Perfection Issues in a contested matter.   Those issues were already pending in the Committee Adversary Proceeding. Rule 7001 required that any action by the Agent to determine the validity, priority, or extent of a lien or other interest in property as against the Committee (acting on behalf of the bankruptcy estate) must proceed in an adversary proceeding.   Under the adversary proceeding rules, the Committee must be afforded the right to discovery before a motion on summary judgment is filed.[5]  The Court's grant of summary judgment in a contested matter and before the Committee was afforded discovery in the Committee Adversary Proceeding was erroneous, prejudicial and must be reversed.

---

[5]   The Agent and other defendants in the Committee Adversary Proceeding each elected to file an answer, rather than seeking any relief under Federal Rule of Bankruptcy Procedure 7012 (Fed.R.Civ.Pro. 12).

## ARGUMENT

Federal Rule of Bankruptcy Procedure 7001 requires an adversary proceeding when a party seeks a ruling on the "validity, priority, or extent of a lien or other interest in property", or to "obtain a declaratory judgment relating to any of the foregoing".   Fed. R. Bankr. P. 7001(a)(2), (a)(9).[6]  The Committee Adversary Proceeding seeks, among other relief,  a ruling on the validity, priority or extent of the Agent's purported lien.  The Committee never waived the protections of Fed. R. Bankr. P. 7001.

When the Agent sought a summary disposition on these issues as a contested matter in the Bankruptcy Case – and to obtain summary judgment before litigation was fully underway – the Committee objected to the "end run" around the Committee Adversary Proceeding that had just been filed.  MA. Ex. 28 at 2-3.  The Bankruptcy Court Order made no mention of this objection, yet proceeded to rule against the Committee before the Committee had the opportunity to litigate.  It also purported to rule against every other party in the bankruptcy case without affording them the opportunity of their own discovery.

As with its decision on the "true participations," the Bankruptcy Court acted in haste and its decision should be reversed.  "When an adversary proceeding is required under Rule 7001(2), courts are not free to disregard the rule."  *SLW, Inc. v. Mansaray-Ruffin* (*In re Mansaray-Ruffin*), 530 F.3d 230, 236 (3rd Cir. 2008).  Determining the validity, extent, and priority of liens requires the filing of an adversary proceeding and the additional protections provided by that adversary

---

[6]   The exclusion in Rule 7001(a)(2) for proceedings under Rule 4003(d) is not applicable in the instant case.

proceeding (such as the requirement that the Agent provide discovery to the Committee prior to filing a summary judgment motion).[7]

The Agent's only opposition to the Committee's objection was found in a footnote of its reply brief. MA Ex. 34 at 2 n.2. In that footnote, the Agent mischaracterized the Medallion/North Mill/Agent Stipulation as "directing that '[s]ummary judgment motions (including cross-summary judgment motions) and relating briefing in respect of the Perfection Issues shall be filed in the Debtor's main bankruptcy case.'" *Id.* Contrary to the limitations in the Medallion/North Mill/Agent Stipulation, the Agent indicated for the first time that a summary judgment motion was intended to create a "law of the case." *Id.* This assertion is irrelevant since the Committee was neither a party to the Medallion/North Mill/Agent Stipulation nor was it binding on the Committee.

---

[7]  *See Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746 (5th Cir. 1995) (reversing bankruptcy court's injunction order because bankruptcy court did not conduct full adversary proceeding required under Rule 7001, also finding no waiver where request for adversary was made prior to hearing and re-urged at hearing); *Haber Oil Co. v. Swinehart (Matter of Haber Oil Co.)*, 12 F.3d 426, 436-441 (5th Cir. 1994) (reversing bankruptcy court which had allowed a type of claim listed in Rule 7001 to proceed without the filing of an adversary proceeding); *Bear v. Coben (In re Golden Plan of Calif., Inc.)*, 829 F.2d 705, 712 (9th Cir.1986) (reversing determination of issue covered by Rule 7001 because party seeking determination had failed to initiate an adversary proceeding and commenting that party's failure to comply improperly imposed on affected party the "burden of challenging [the] action and thus contravened Rule 7001"); *Brady v. Andrew (In re Commercial W. Fin. Corp.)*, 761 F.2d 1329, 1337 (9th Cir. 1985) (stating that if a party wants the benefits of the Bankruptcy Code, it "must carry the burden of following the mandated procedures"); *In re Panache Cuisine, LLC*, No. 13–17027–JS, 2013 WL 5350613, at *5 (Bankr. D. Md. Sept. 13, 2013) ("The Bankruptcy Rules require the filing of a complaint to determine the nature, extent and priority of an interest in property of the estate, even when the allegation of the trust beneficiary is that its interest is not property of the estate."); *Tex. Comptroller of Public Accounts v. Liuzza (In re Tex. Pig Stands, Inc.)*, 2008 U.S. Dist. LEXIS 116047, Case No. SA-08-CA-0533-OG (W.D. Tex. Aug. 27, 2008) (reversing bankruptcy court order for failing to conduct adversary proceeding as required by Rule 7001); *In re Morabito Bros., Inc.*, 188 B.R. 114, 117 (Bankr. W.D.N.Y. 1995) ("[T]he termination of colorable property interests will require the greater procedural protections of an adversary proceeding.").

- 11 -

The Medallion/North Mill/Agent Stipulation, as merely an agreement among Medallion, North Mill and the Agent, did not have the effect of disposing with the fundamental rule of procedure that a determination made against the Committee (and every other party in interest in the bankruptcy case) and the Estate regarding the validity, extent and priority of liens on property of the Estate be made only in an adversary proceeding after discovery and trial.  A stipulation is a contract which will be enforced in accordance with its specific terms.  *In re Royster Co.*, 132 B.R. 684, 687-88 (Bankr. S.D.N.Y. 1991), *see also HLO Land Ownership Assocs. Ltd. P'ship. v. City of Hartford*, 248 Conn. 350, 356, 727 A.2d 1260 (1999) ("[It is a] well established principle that . . . a stipulation of the parties is to be regarded and construed as a contract." (citation and internal quotation marks omitted)).  Further, "[i]t goes without saying that a contract cannot bind a nonparty."  *Davis v. Blige*, 505 F.3d 90, 103 (2d Cir. 2007) (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002)).  The Committee was not a party to the stipulation and "a stipulation . . . does not operate in favor of persons who were not parties to the stipulation."  *Gail v. South Branch Nat. Bank of South Dakota, Sioux Falls S.D.*, 783 F.2d 125, 128 (8th Cir. 1986); *Smith v. Bic Corp.*, Civ. A. No. 87–0795, 1987 WL 14619, at *5 (E.D. Pa. 1987) (stipulated order between parties in one proceeding does not have collateral effect on non-parties).

Additionally, the Medallion/North Mill/Agent Stipulation never even purports to bind the Committee or any other non-signatory.  It provides:

> 3.    Subject to the provisions of this Stipulation and Order, ***all parties hereto*** consent to the Perfection Issues being addressed through a contested matter in the bankruptcy case.  (emphasis added)

CA_0180.

- 12 -

Nothing in the Medallion/North Mill/Agent Stipulation or the Bankruptcy Court's purports to adjudicate the propriety of such a procedure vis-à-vis the Committee, the Estate or any non-signing creditor.

Moreover, the dispute among Medallion, North Mill, and the Agent involved assets that were *not* property of the Estate (that is, proceeds attributable to the Medallion and North Mill true participation interests). The Bankruptcy Court indeed couched its decision as solely relating to Medallion and North Mill's attempt to establish the priority of their participation interests in assets that the Bankruptcy Court had just ruled were not part of the Estate (*i.e.*, the proceeds of the Debtor's post-petition sales of portfolios of loans and receivables which were attributable to the Medallion and North Mill "true participation interests"). Mem. Op. at 5, 10.

The Committee (and all other parties in interest) suffered prejudice from the Bankruptcy Court's decision to grant summary judgment in favor of the Agent with respect not just to the proceeds attributable to certain participation interests in certain portfolios of loans and receivables in which Medallion and North Mill (but not the Estate) held interests, but as to *everyone* and *for every purpose*. Medallion and North Mill have identified certain related factual disputes that should have resulted in a denial of the grant of summary judgment to the Agent (or else summary judgment in their favor). *E.g.*, Medallion Br. at 40-41 (describing contemporaneous admissions by Agent and parties' failure to include any reference to 2001 financing statement in transaction documents after 2006). Whether the Agent agreed to permit "participants" to lend money to the Debtor or to purchase participations free and clear of a lien is a factual issue requiring a trial. *See Citibank, N.A. v. Tele/Resources, Inc.*, 724 F.2d 266, 269 (2d Cir. 1983) (whether secured lender permitted subsequent party to take debtor's asset free and

- 13 -

clear of its lien is factual issue for trial).   The Committee never waived the requirements of Bankruptcy Rule 7001 for these factual disputes to be litigated in an adversary proceeding.

Another factual issue for determination in the Committee Adversary Proceeding is the effect of the 2006 Agreement on the validity of the ongoing financing statement.  *E.g.*, CA_0045, CA_0220 (Committee Compl. at 30 ¶ 98).  The 2006 Agreement between the Agent and the Debtor extinguished the underlying debt obligations of the 2001 Agreement between IDB and the Debtor, thereby also extinguishing the related security interest.  *See In Roswell Capital Partners LLC v. Beshara*, 436 F. App'x. 34, 35 (2d Cir. 2011) ("It is black letter law that extinguishing a debt obligation terminates any accompanying security interest because '[a] security interest cannot exist independent of the obligation it secures.'") (citation omitted); *Unisys Fin. Corp. v. Resolution Trust Corp.*, 979 F.2d 609, 611 (7th Cir.1992) ("A lien is parasitic on a claim. If the claim disappears—poof! the lien is gone."); *In re Leisure Time Sports, Inc.*, 194 B.R. 859, 861 (9th Cir. B.A.P. 1996) ("A security interest cannot exist ... independent from the obligation which it secures."); *In re Screens Unlimited, Inc.*, 9 B.R. 186, 188 (Bankr. M.D. Fla. 1981) (senior lienholder's security interest extinguished when paid or satisfied, thus senior lienholder could not assign his senior secured to another creditor, even though a UCC-1 is still on record for the first obligation).  If the parties intended a new obligation through the 2006 Credit Agreement between the *Agent* and the Debtor, then the 2001 Financing Statement (which perfected the security agreement for the 2001 Credit Agreement between *IDB* and the Debtor) does not perfect notice of that new obligation.  *See, e.g., Louis Jones Enters. v. United States (In re Louis Jones Enters.)*, Nos. 10 B 11375, 10 A 1061, 2010 WL 4259977, at *6 (Bankr. N.D. Ill. Oct. 21, 2010) (holding that a financing statement for a novated agreement was not valid for a

- 14 -

subsequent, unperfected agreement); *Harder v. United States*, No. Civ. A. No. 91-10513-WD, 1993 WL 667770, at *8 (D. Mass. Aug. 18, 1993) (whether parties have extinguished old debt and older financing statement made invalid "is generally a matter of their intent").

The Bankruptcy Court improperly held as a matter of law that the 2001 Financing Statement perfected the 2006 Agreement, rather than treating it as a dispute of fact.  Mem. Op. at 20-24.  The cases cited by the Bankruptcy Court involved refinancing or payoffs among the same lender and debtor, and also involving the same collateral.  Mem. Op. at 22 (citing, among others, *In re Gilchrist Co.*, 403 F. Supp. 197, 202-03 (E.D. Pa. 1975)).[8]  Here, the lenders were different between the 2001 Agreement and 2006 Credit Agreement:  IDB lent on its own behalf in 2001 and then the lenders changed in 2006 with IDB acting only as agent beginning in 2006.  Mem. Op. at 18 n. 5 ("Because IDB as Agent is not the same legal entity as IDB, whatever rights the Debtor granted to IDB in the 2001 Security Agreement or 2004 Security Agreements, IDB as Agent cannot, and at oral argument conceded that it does not, rely on the grant of security by the Debtor to IDB.").  Further, the 2006 Credit Agreement permitted the sale of participation interests in the underlying receivables, thus changing the nature of the underlying collateral.  MA Ex. 45 at 2 (defining "Borrower Participation") & 4-5 (excluding "Borrower Participations" from "Eligible Client/Dealer Loans").  Whether the 2001 Financing Statement was sufficient to perfect a lien for a new credit agreement between different parties and against different collateral is a matter of fact -- and it is a disputed fact.  Since it involves the extent, validity or priority of liens, it is to be determined in an adversary proceeding and subject to the protections afforded

---

[8]   The Bankruptcy Court cited to *Matter of Giddens*, 205 B.R. 349, 353 (Bankr. M.D. Ga. 1997).  Mem. Op. at 28.  That case, however, also involved a renewed agreement between the borrower and the same lender and not, as here, a new agreement between the borrower and different lenders.

- 15 -

thereby.  *See, e.g., In re Louis Jones Enterprises*, 2010 WL 4259977, at *6; *Harder*, 1993 WL 667770, at *8.

These are but a few of the issues that might ultimately be raised in the Committee Adversary Proceeding.  The Committee may identify others following the completion of discovery.  The Bankruptcy Court should not have prematurely decided them against the Committee (and every other party in interest) in a contested matter.  This violation of Rule 7001 was erroneous and must be reversed.

## JOINDER

To the extent that such can be applicable to the Committee, in accordance with Bankruptcy Rule 8014(e), the Committee hereby joins and hereby adopts by reference those portions of the briefs and other papers submitted by Medallion, North Mill and ZFI supporting reversal of the Bankruptcy Court's granting of the summary judgment in favor of the Agent.

## CONCLUSION

For the reasons stated herein, the Court should reverse the Bankruptcy Court Order granting summary judgment against the Committee.  The Committee requests oral argument.

- 16 -

Dated: July 7, 2015

**PERKINS COIE LLP**

/s/Schuyler G. Carroll
Schuyler G. Carroll
John D. Penn
David F. Olsky
30 Rockefeller Plaza, 22nd Floor
New York, New York 10112
Tel:  (212) 262-6900
Fax: (212) 977-1649

*Attorneys for Official Committee of*
*Unsecured Creditors of Oak Rock Financial LLC*

- 17 -

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 7, 2015 a copy of the foregoing brief was served on all parties in the case through ECF and that I caused a courtesy copy of the foregoing to be served by email to counsel of record.

 _/s/David F. Olsky_____

- 18 -